IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MESQUITE COMMUNITY HOSPITAL | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-07-CV-1093-BD |
| MICHAEL O. LEVITT, Secretary of | § | |
| the United States Department of Health | § | |
| and Human Services | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Mesquite Community Hospital seeks judicial review of a final decision of the Secretary of Health and Human Services ("HHS") denying Medicare reimbursement for certain bad debts. For the reasons stated herein, the hearing decision is affirmed.

I.

Plaintiff operates an acute-care hospital that provides services to Medicare beneficiaries. (Plf. Compl. at 2, ¶ 5). Health care providers, like plaintiff, participate in Medicare by entering into an agreement with HHS and the Department of Health and Human Services Center for Medicare and Medicaid Services ("CMS"), which administers the Medicare program. *See* 42 U.S.C. § 1395cc. Entities known as fiscal intermediaries act as agents of CMS in making payments for services to Medicare providers. *Id.* § 1395h; *see also* 42 C.F.R. § 421.100. Under Medicare Part A,[1] hospitals are required to file a cost report with their intermediaries at the end of the fiscal year which reflects

---

[1] The Medicare statute contains two main parts. Part A, commonly known as "Hospital Insurance Benefits," authorizes payment for primary institutional care such as hospitalization, skilled nursing care, and home health agency services provided by hospitals and other institutions or agencies. *See* 42 U.S.C. §§ 1395c-1395i-4. Part B authorizes supplemental medical insurance for covered physician services and other medical benefits. *See id.* §§ 1395j-1395w-4. The instant case implicates only Medicare Part A.

actual costs incurred. 42 C.F.R. § 413.64; *see also id.* § 413.24. The intermediary then makes adjustments to provider reimbursement based upon the cost report in accordance with the requirements of the Medicare statute and regulations promulgated thereunder. 42 U.S.C. § 1395g; *see also* 42 C.F.R. § 421.100.

At the close of the 2000 fiscal year, plaintiff submitted a cost report to its fiscal intermediary, CareFirst of Maryland, Inc., seeking, *inter alia*, reimbursement for certain debts attributable to unpaid deductibles and co-insurance amounts owed by Medicare beneficiaries. (Tr. at 277-512). The intermediary audited the report and disallowed approximately $263,006.00 in bad debts because those accounts were sent to an outside collection agency and had not been returned as uncollectible. (*See* Plf. Compl. at 6, ¶ 21).[2] Plaintiff appealed that decision to the Provider Reimbursement Review Board ("PRRB"), which held that the hospital "properly claimed Medicare bad debts even though the accounts were still with the collection agency." (Tr. at 33). The intermediary then appealed to the CMS Administrator, who reversed the PRRB ruling and reinstated the original adjustment disallowing the bad debts. (*Id.* at 2-12). The decision of the CMS Administrator represents the final decision of the Secretary of HHS and is subject to judicial review by a federal district court.

II.

Judicial review in a Medicare reimbursement case is conducted in accordance with the standards set forth in the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, *et seq. See* 42 U.S.C. § 1395oo(f)(1); *Harris County Hospital Dist. v. Shalala*, 64 F.3d 220, 221 (5th Cir. 1995). Under those standards, a district court may overturn the Secretary's decision only if it is "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial

---

[2] For the cost reporting period at issue, Medicare bad debt reimbursement was limited to 60% of the allowable amount. *See* 42 C.F.R. § 413.89(h). Therefore, plaintiff seeks reimbursement of $157,804.00, which is 60% of $263,006.00. (*See* Plf. Compl. at 6, ¶ 21).

evidence on the record taken as a whole." *Harris County Hospital Dist.*, 64 F.3d at 221. In addition, the court must defer to the Secretary's interpretation of the Medicare statute and its attendant regulations. *Id.* "The Secretary's interpretation of Medicare regulations is given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Id., quoting Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994).

A.

The Medicare program, established under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, is a federally funded health insurance program for the elderly and disabled. *See* 42 U.S.C. §§ 1395c, 1395j, 1395k. Under regulations promulgated by the Secretary of HHS, Medicare beneficiaries are responsible for paying a portion of the cost of certain health care services in the form of deductibles and co-insurance. *See* 42 C.F.R. §§ 409.80-409.83. Deductible and co-insurance obligations that are not paid by Medicare beneficiaries are deemed to be "bad debts." *Id.* § 412.115(a). Medicare providers are reimbursed for bad debts to prevent the costs of covered services from being shifted to non-Medicare patients or their payors. *Id.* § 413.89(d).

A Medicare provider may be entitled to reimbursement for bad debts if:

> (1) The debt [is] related to covered services and derived from deductible and coinsurance amounts;
>
> (2) The provider [can] establish that reasonable collection efforts were made;
>
> (3) The debt was actually uncollectible when claimed as worthless; and
>
> (4) Sound business judgment established that there was no likelihood of recovery at any time in the future.

*Id.* § 413.89(e). To be considered a "reasonable collection effort," a provider's effort to collect Medicare deductibles and co-insurance "must be similar to the effort the provider puts forth to collect

comparable amounts from non-Medicare patients." *See* CMS Provider Reimbursement Manual ("PRM") § 310.[3] Such efforts may include "use of a collection agency in addition to or in lieu of subsequent billings, follow-up letters, telephone and personal contacts." *Id.* § 310.A. If a debt remains unpaid after 120 days of reasonable and customary collection efforts, it may be deemed uncollectible. *Id.* § 310.2. Notwithstanding this presumption of noncollectibility, the Secretary of HHS, through CMS, interprets the applicable regulations to require the provider to cease all collection efforts as a precondition to claiming unpaid obligations as Medicare bad debt. The Medicare Intermediary Manual ("IM"), another source of guidelines and interpretative rules, provides that:

> If the bad debt is written-off on the provider's books 121 days after the date of the bill and then turned over to a collection agency, the amount cannot be claimed as a Medicare bad debt on the date of the write-off. *It can be claimed as a Medicare bad debt only after the collection agency completes its collection effort.*

IM § 4198 at 2-59 (emphasis added). A CMS policy memorandum dated June 11, 1990 further clarifies the bad debt policy:

> [U]ntil a provider's reasonable collection effort has been completed, including both in-house efforts and the use of a collection agency, a Medicare bad debt may not be reimbursed as uncollectible. This is in accord with the fourth criterion in [42 C.F.R. § 413.89(e)], which provides that an uncollected Medicare account cannot be considered an allowable Medicare bad debt unless sound business judgment established that there is no likelihood of recovery at anytime in the future. *We have always believed that, clearly, there is a likelihood of recovery for an account sent to a collection agency and that claiming*

---

[3] The PRM is an extensive set of informal interpretive guidelines and policies published to assist intermediaries and providers in implementing the Medicare regulations. *See Community Care, LLC v. Leavitt*, ___ F.3d ___, 2008 WL 2894700 at *1 n.2 (5th Cir. Jul. 29, 2008), *quoting v. Battle Creek Health Systems v. Leavitt*, 498 F.3d 401, 404 (6th Cir. 2007). However, the PRM rules "do not have the force and effect of law and are not accorded that weight in the adjudicatory process." *Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87, 99, 115 S.Ct. 1232, 1239, 131 L.Ed.2d 106 (1995).

> *of a Medicare bad debt at the point of sending the account to the agency would be contrary to the bad debt policy* in [PRM §§ 308 & 310].
>
> Therefore, in accordance with our position, when we had been informed of such situations, we had advised regional offices and others that *a bad debt could not be claimed while an account is at the collection agency.*

¶ 38,623 CCH Medicare & Medicaid Guide 1990 (emphases added).

B.

The fiscal intermediary denied plaintiff's claim for Medicare reimbursement because the accounts at issue were sent to an outside collection agency and there was no evidence the accounts had been recalled or the collection efforts had ceased. (*See* Tr. at 24). Indeed, during the audit process, plaintiff admitted that the delinquent accounts had not been returned by the collection agency. (*Id.* at 1052-53, 1054-55). Nevertheless, plaintiff contends that the Secretary's decision constitutes an abuse of discretion because it is contrary to PRM § 310.2 and imposes additional requirements that are not present in 42 C.F.R. § 413.89(e).[4]

These same arguments were considered and rejected by the Sixth Circuit Court of Appeals in *Battle Creek Health Systems v. Leavitt*, 498 F.3d 401 (6th Cir. 2007). In that case, a Medicare provider wrote-off certain debts that were at least 120 days old, including debts that had been referred to an outside collection agency. The fiscal intermediary concluded that the accounts sent to the collection agency, which had not been returned to the provider as uncollectible, did not meet the requirements of 42 C.F.R. § 413.89(e) because "th[e] debts had never been determined to be

---

[4] In a letter to the court dated August 19, 2008, plaintiff suggests that *Foothill Hospital-Morris L. Johnston Memorial v. Leavitt*, 558 F.Supp.2d 1 (D.D.C. 2008), supports its position and has "significant bearing on this case." The issue presented in *Foothill Hospital* was whether the Secretary had violated 42 U.S.C. § 1395f, known as the "Bad Debt Moratorium," by denying a claim for reimbursement of unpaid debts because the delinquent accounts had been referred to an outside collection agency. Unlike the provider in *Foothill Hospital*, plaintiff makes no argument concerning the Bad Debt Moratorium in this case.

uncollectible and collection efforts could be expected to continue after the accounts were written off." *Battle Creek*, 498 F.3d at 406. According to the intermediary, "the fact that the bad debts remained at a collection agency constituted evidence that [the provider] did not consider the accounts to be worthless or that there was no likelihood of recovery at any time in the future." *Id.* The CMS Administrator upheld that decision and the district court affirmed. On appeal, the Sixth Circuit held that the Secretary's interpretation of section 413.89(e) was "eminently reasonable." *Id.* at 411. The court wrote:

> Plaintiffs' debts did not meet the criteria for reimbursement because the debts at issue were being serviced by a collection agency when claimed as worthless. The very fact that a collection agency was still attempting to collect the bad debts at issue indicates that these debts had not yet been determined to be "actually uncollectible when claimed as worthless" and certainly contraindicates that "[s]ound business judgment established that there was no likelihood of recovery at any time in the future." 42 C.F.R. § 413.89(e)(3) and (4). These criteria cannot be met until the collection agency completes its collection effort and returns the debts to plaintiffs as uncollectible. Moreover, as the Secretary determined properly, the language in PRM § 310.2 is discretionary in nature ("*may* be deemed"), rather than mandatory. [Citations omitted]. Thus, application of the presumption is not inevitable in every instance due to the mere passage of 120 days following a provider's use of reasonable collection efforts.

*Id.*

In an attempt to distinguish *Battle Creek*, plaintiff argues that unlike the Medicare provider in that case, it follows an established policy to determine whether a debt is collectible. Under this policy:

> (1) plaintiff employs in-house collection efforts for the first 90 days the account is due;
>
> (2) for days 90-120, plaintiff places the account with a collection agency to see if it can be collected;

(3) the collection agency sends reports on the accounts to plaintiff on, or shortly after, the 120th day, detailing collection activities and account status; and

(4) plaintiff compares the report to the outstanding Medicare accounts to determine if the account is collectable or if collection efforts should be continued before declaring the account as a bad debt.

(*See* Plf. MSJ Br. at 9-10). Thus, plaintiff argues that its policies differ from those in *Battle Creek* because it considers "actual data concerning the collectibility of accounts before declaring such accounts uncollectible." (*Id.* at 10). Regardless of the procedures employed by plaintiff, the issue on judicial review remains the same--whether the Secretary abused his discretion in denying Medicare reimbursement for bad debts that were still in the possession of an outside collection agency. As in *Battle Creek*, the Secretary determined that an account has some value as long as the provider permits a collection agency to continue its collection efforts. Only when the provider recalls the account and ceases collection efforts is the account deemed uncollectible. Plaintiff has failed to establish that such an interpretation of 42 C.F.R. § 413.89(e) is plainly erroneous, inconsistent with the Medicare regulations, or contrary to law. *See Battle Creek*, 498 F.3d at 411-13.

## CONCLUSION

The Secretary's final decision denying Medicare reimbursement for bad debts incurred by plaintiff during the 2000 fiscal year is neither arbitrary nor inconsistent with the governing Medicare regulations and is supported by substantial evidence. Accordingly, the decision is affirmed in all respects.

SO ORDERED.

DATED: September 5, 2008.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE